IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KRISTA V. LOHR   :   CIVIL ACTION
:
    v.   :
:
KIMMEL & SILVERMAN, P.C.,   :
et al.   :   NO. 10-5857

MEMORANDUM

Bartle, C.J.                                April 28, 2011

      Plaintiff Krista V. Lohr ("Lohr") brings this diversity action against defendants Kimmel & Silverman, P.C. (the "law firm"), Robert Silverman ("Silverman"), and Craig Kimmel ("Kimmel") for sexual harassment and retaliation under the Massachusetts Anti-Discrimination Statute, Mass. Gen. Laws ch. 151B *et seq*. She also pleads common law claims for wrongful discharge against the law firm and for tortious interference with a contractual or advantageous business relationship against defendants Kimmel, Silverman, and Angela Troccoli ("Troccoli"). Lohr is a citizen of Massachusetts, while Troccoli is a citizen of Rhode Island. Kimmel and Silverman are citizens of Pennsylvania.

      Before the court is the motion of Troccoli to dismiss the complaint for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure and for insufficient service of process under Rule 12(b)(5). The defendant law firm as well as individual defendants Kimmel and

Silverman further move to dismiss the action for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  Finally, Lohr seeks to strike the affidavit of Matthew A. Porter, an attorney for defendants.

I.

When a defendant moves to dismiss a claim under Rule 12(b)(2), the plaintiff bears the burden of showing that personal jurisdiction exists.  See Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007).  At this stage the plaintiff must establish only "a prima facie case of personal jurisdiction" and is entitled to have her allegations taken as true and all factual disputes drawn in her favor.  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).  Nonetheless, the plaintiff must allege "specific facts" rather than vague or conclusory assertions.  Marten, 499 F.3d at 298.

When reviewing a facial challenge to subject matter jurisdiction under Rule 12(b)(1), the court accepts the plaintiff's allegations as correct and draws inferences in the plaintiff's favor.  Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 & n.4 (3d Cir. 2002); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  A facial challenge to subject matter jurisdiction is one in which a defendant argues that "the allegations on the face of the complaint, taken as true," are insufficient to invoke the court's jurisdiction.  Turicentro, 303 F.3d at 300.

Similarly, when deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "'mere possibility of misconduct.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1950). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. On a motion to dismiss, a court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990)).

II.

The following facts are undisputed or viewed in the light most favorable to the nonmoving party. Lohr was employed as a paralegal in the Massachusetts office of the law firm from

May 2007 until November of that same year.  While at the law firm, Lohr was primarily responsible for assisting Troccoli, an attorney in the Massachusetts office.

According to Lohr, the Massachusetts office was inadequately staffed and disorganized.  Lohr asserts that there was little supervision and no practical way to monitor cases.  Lohr became concerned about these issues and confronted Troccoli.  Lohr also voiced these concerns to Craig Kimmel and to Christopher Holliday, an attorney who supervised her in the Massachusetts office.  These complaints went unaddressed.

During her time at the law firm, Lohr purportedly became aware of an affair between Troccoli and Kimmel.  Lohr maintains that she attempted to express her concerns about Troccoli to Kimmel in a closed-door meeting in the Massachusetts office.  During the meeting, Troccoli entered the room where she allegedly sat on Kimmel's desk "crossing her legs while glaring and smirking" and told Lohr "you cannot lock the doors here."  After the meeting, the relationship between Troccoli and Lohr deteriorated further.  Lohr requested to be reassigned to another attorney, but her request was denied.  The denouement occurred when Lohr was terminated after she complained to Holliday about certain unethical conduct on the part of Troccoli.  Lohr never avers in the complaint who actually terminated her.

Lohr maintains that Troccoli created a hostile environment during Lohr's tenure by:  (1) arriving late to work and leaving early; (2) refusing to speak with clients; (3)

engaging in fraudulent conduct with regard to cases; (4) intentionally over-billing clients; (5) returning from lunch under the influence of alcohol; (6) acting rudely and dismissively towards Lohr after Lohr refused to sign Troccoli's application for admission to the Connecticut state bar; and (7) refusing to allow her to meet privately with Kimmel.

Lohr subsequently filed suit in this court against Kimmel, Silverman, the law firm, and Troccoli.  After defendants filed their motions to dismiss, we granted the parties time to conduct discovery regarding the personal jurisdiction of this court over Troccoli.  See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003).

III.

We begin with the question whether this court may exercise personal jurisdiction over Troccoli.  A federal district court sitting in diversity may assert personal jurisdiction over a nonresident of the state in which the court sits only to the extent authorized by the law of that state.  Fed. R. Civ. P. 4(k)(1)(A).  Pennsylvania law provides for jurisdiction coextensive with that allowed by the Due Process Clause of the Constitution.  42 Pa. Cons. Stat. Ann. § 5322(b).

Under the due process clause, we may exercise personal jurisdiction only over defendants who have "certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal

quotation omitted).  A parallel inquiry is whether the defendant's contacts with the forum state are such that the defendant "should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Two bases exist upon which a federal district court may exercise personal jurisdiction over a nonresident defendant.  "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state."  Marten, 499 F.3d at 296 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 nn.8-9 (1984)).  There is specific jurisdiction when the claim arises from or relates to conduct purposely directed at the forum state.  Id. (citing Hall, 466 U.S. at 414-15 nn.8-9).

Troccoli has never worked, resided, paid taxes, or owned property in Pennsylvania.  She is not licensed to practice law in Pennsylvania and has never been admitted pro hac vice to any court in the forum.  Furthermore, Troccoli has only traveled to Pennsylvania on three occasions.  On her first visit in 2006, she participated in a two-week training session regarding the substantive area of the law in which she practiced.  In 2007, Troccoli took a day trip to drop off case files at the Pennsylvania office of the law firm.  On her third visit in 2009, Troccoli attended an hour-long meeting regarding the firm's conversion to a paperless record system.  None of these trips took place during Lohr's five-month tenure with the law firm.

-6-

Lohr asserts that this court may exercise general personal jurisdiction over Troccoli because the defendant law firm, headquartered in Pennsylvania, paid her salary and her fees related to bar admission and professional associations. Lohr also points out that the law firm paid for Troccoli's malpractice insurance and for the expenses of the office in Massachusetts where she worked. Furthermore, Troccoli contacted the law firm's Pennsylvania office by telephone and email several times per week. The Pennsylvania office provided technical support and handled human resources for the Massachusetts office.

It is irrelevant, in our view, that the rent, salaries, and other expenses of the Massachusetts office were paid for by the law firm in Pennsylvania. It is also irrelevant that the law firm provided technical support and human resources for the Massachusetts office. These contacts are the actions of the law firm, not of Troccoli herself. There is no evidence that she had any control over the decision of the law firm to provide financial and other support to its Massachusetts office through its Pennsylvania headquarters.

As our Court of Appeals has recognized, "jurisdiction over ... [individual] defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction" in the particular forum. Nicholas v. Saul Stone & Co., 224 F.3d 179, 184 (3d Cir. 2000) (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 (1984)). Rather, "[e]ach defendant's contacts with the forum state must be

assessed individually." Id. at 781 n.13.  The fact that a check is written from a bank account located in the forum state is of "negligible significance" for purposes of determining personal jurisdiction.  Helicopteros, 466 U.S. at 416.  As the Supreme Court has stated, the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State." Id. at 417.  Consequently, none of these circumstances on which Lohr relies demonstrates that Troccoli purposefully availed herself of conducting business or other activities in this forum. See Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Lohr further argues that Troccoli's telephone and email contacts with the forum are sufficient to establish personal jurisdiction.  We acknowledge that "[j]urisdiction ... may not be avoided merely because the defendant did not *physically* enter the forum State."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).  And as Lohr correctly asserts, email and telephone communications are relevant to the personal jurisdiction analysis.  See, e.g., Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001); Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993).

Nonetheless, the threshold required for a finding of general personal jurisdiction is very high.  See Compagnie des Bauxites de Guinea v. Ins. Co. of N.A., 651 F.2d 877, 890 & nn.1-2 (3d Cir. 1981).  While correspondence such as telephone calls "remain a consideration, they are insufficient, alone, to confer

personal jurisdiction." BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 262 (3d Cir. 2000) (quoting Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1103 (8th Cir. 1996)). Troccoli's telephone and email contacts, combined with her three visits to Pennsylvania from 2006 to 2009, are not sufficiently "systematic and continuous" to support a finding of general jurisdiction.

These contacts are also insufficient to establish specific personal jurisdiction. "[S]pecific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 323 (3d Cir. 2007). In other words, jurisdiction must be reasonably foreseeable and proportional to the defendant's contacts. Id.

While Troccoli communicated with the Pennsylvania office at the request of her supervisors, these communications largely concerned her work assignments. None of Troccoli's visits to Pennsylvania took place while Lohr was employed at the law firm. Troccoli performed all of her work for the law firm in Massachusetts, not Pennsylvania. Similarly, all of the purportedly hostile interactions between Troccoli and Lohr took place entirely in Massachusetts. That state is where Lohr suffered the adverse effects of her relationship with Troccoli and was eventually terminated, giving rise to her tortious interference claim. Consequently, we cannot say that Lohr's claim against Troccoli "arises out of" Troccoli's contacts with

the Eastern District of Pennsylvania.  See Marten, 499 F.3d at 296.  Indeed, due to her limited contacts with Pennsylvania, Troccoli should not "reasonably anticipate being haled into court" in this District.  Woodson, 444 U.S. at 297.

We must next consider whether the claims against Troccoli should be dismissed or transferred.  Under 28 U.S.C. § 1631,

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed.

Our Court of Appeals has instructed that, under § 1631, a district court has the discretion to "permit the transfer of all or only part of an action."  D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 111 (3d Cir. 2009) (citing Miller v. United States, 753 F.2d 270, 275-76 (3d Cir. 1985)).  When considering whether any transfer is warranted, a court "should weigh the factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums."  Id. (citing White v. ABCO Eng'g Corp., 199 F.3d 140, 144-45 (3d Cir. 1999)).  A court should decline to transfer part of an action "if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places."  Sunbelt Corp. v. Noble, Denton &

Assocs., 5 F.3d 28, 33-34 (3d Cir. 1993) (quoting Liaw Su Teng v. Skaarup Shipping Corp., 743 F.2d 1140, 1148 (5th Cir. 1984)).

Here, Lohr has pleaded only one claim against Troccoli, for wrongful interference with a contractual or advantageous business relationship. Lohr asserts that because the statute of limitations has now run this claim will be time barred if she is required to re-file in Massachusetts. However, Lohr's claim against Troccoli stems from the same events that gave rise to her other claims against Kimmel, Silverman, and the law firm. Transferring this lone claim to the District Court for the District of Massachusetts would lead to duplicative litigation and the resulting "wastefulness of time, energy and money" would not be in the interests of justice. Bank Express Int'l v. Kang, 265 F. Supp. 2d 497, 508 (E.D. Pa. 2003) (citing Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960)). We decline to transfer the claim and will dismiss it.

IV.

Troccoli also maintains that the complaint should be dismissed as to her for insufficient service of process under Rule 12(b)(5) of the Federal Rules of Civil Procedure. Under the Federal Rules of Civil Procedure, an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(e)(1). Lohr left a copy of the summons and complaint at the Pennsylvania office of Kimmel and Silverman. Lohr now concedes that this service was

-11-

insufficient as to Troccoli because the Pennsylvania office is not Troccoli's "usual place of business" as required under Pennsylvania law.  See Pa. R. Civ. P. 402(a)(2)(iii).  Since we are dismissing the action as to her for lack of personal jurisdiction, allowing Lohr to effect proper service on Troccoli is now a moot point.

V.

We next address the motion of defendants to dismiss for lack of subject matter jurisdiction.  Federal courts have subject matter jurisdiction to hear lawsuits where the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a); In re Briscoe, 448 F.3d 201, 215-16 (3d Cir. 2006).  In determining the amount in controversy, a court may rely on the sum claimed by plaintiff as long as the claim is made in good faith.  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938).  Unless it appears to a "legal certainty" that the claim is actually less than the jurisdictional amount, a court should decline to grant a motion to dismiss on this ground.  Id. at 289.

Lohr brings this action against Kimmel, Silverman, and the law firm under the Massachusetts Anti-Discrimination statute. See Mass. Gen. Laws c. 151B, § 5.  Defendants argue that Lohr's lost wages are only $6,500.  In support of their motion, defendants have submitted an affidavit signed by their attorney, Matthew A. Porter.  Lohr argues that this affidavit should be

-12-

stricken from the record because it is hearsay and includes information which was discussed in settlement negotiations.

The statute at issue authorizes a plaintiff to recover, in addition to lost wages, damages for emotional distress and punitive damages. Id.; see also Stonehill College v. Mass. Comm. Against Discrimination, 808 N.E.2d 205, 222-26 (Mass. 2004); Dalrymple v. Winthrop, 740 N.E.2d 204, 210-11 (Mass. App. Ct. 2000). It also provides that a prevailing plaintiff is entitled to an award of reasonable attorney's fees and costs. See Mass. Gen. Laws c. 151B, § 9. Our Court of Appeals has explained that "[a]lthough 28 U.S.C. § 1332 excludes 'interest and costs' from the amount in controversy, attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action." Suber v. Chrysler Corp., 104 F.3d 578, 585 (3d Cir. 1997) (citing Mo. State Life Ins. Co. v. Jones, 290 U.S. 199, 202 (1933)). Even if defendants' calculation of Lohr's lost wages is correct, it is not a legal certainty at this point that Lohr cannot recover an amount in excess of $75,000 for lost wages, emotional distress, punitive damages, and attorney's fees.[1]

Accordingly, we will deny the motion of defendants to dismiss for lack of subject matter jurisdiction.

---

1. Because the affidavit of Matthew Porter is not harmful to plaintiff here, we will deny her motion to strike as moot.

VI.

Defendants Kimmel, Silverman, and the law firm also move to dismiss the hostile work environment claims for failure to state a claim. Under the Massachusetts Anti-Discrimination statute, sexual harassment includes "verbal or physical conduct of a sexual nature ... [that has] the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." Mass. Gen. Laws c. 151B, § 1(18). To state a claim for hostile work environment, the plaintiff must plead conduct that is "sufficiently severe and pervasive to interfere with a reasonable person's work performance." Muzzy v. Cahillane Motors, Inc., 749 N.E.2d 691, 694-95 (Mass. 2001).

Defendants maintain that Lohr has not stated a claim that constitutes a hostile work environment. Plaintiff counters by citing Ritchie v. Department of State Police. 805 N.E.2d 54 (Mass. App. Ct. 2004). In Ritchie, the Massachusetts Court of Appeals considered whether a plaintiff stated a claim for hostile work environment based on allegations that she was exposed to a "single, consensual office romance" where "no allegations of any sexual advances, requests, or conduct [was] directed at the plaintiff." Id. at 60. There, the plaintiff alleged that her supervisor and another worker "spent time in the office kitchen together, played 'footsie,' held hands, gave each other shoulder massages, played romantic music in their shared office, and departed from work together." 805 N.E.2d at 57. The court

-14-

recognized that "[a] sexual relationship between a supervisor and a co-employee could adversely affect the workplace without creating a hostile sexual environment.  A supervisor could show favoritism that, although unfair and unprofessional, would not necessarily instill the workplace with oppressive sexual accentuation."  Id. at 60-61 (quoting Drinkwater v. Union Carbide Corp., 904 F.2d 853, 862 (3d Cir. 1990)).  Although the court questioned whether the allegations set forth in the plaintiff's complaint were adequate, it allowed the action to proceed and refused to hold that an office affair could never form the basis of a hostile work environment claim.  Id. at 61 & n.14.

This case is in sharp contrast to Ritchie.  Here, Lohr has alleged merely that Troccoli entered a closed-door meeting with Kimmel, sat on Kimmel's desk, "cross[ed] her legs while glaring and smirking" at Lohr, and told Lohr "you cannot lock the doors here."  Her complaint is devoid of any other allegations regarding her observations of the alleged affair.  In sum, she has not alleged that she observed Troccoli and Kimmel or either of them acting in a way which could possibly be deemed to constitute a hostile work environment.  See Ritchie, 805 N.E.2d at 662.

Accordingly, we will dismiss the claims of Lohr for hostile work environment in Counts I, II, and III.

### VII.

We now consider Lohr's claims for retaliation.  To state a claim for retaliation, a plaintiff must plead that:  (1)

she engaged in protected activity; (2) she suffered an adverse employment decision; and (3) that a causal connection exists. Mass. Gen. Laws c. 151B, § 4(4A); Pontremoli v. Spaulding Rehab. Hosp., 747 N.E.2d 1261, 1264 (Mass. App. Ct. 2001). An individual who makes a complaint to management regarding a hostile work environment engages in protected activity. Ritchie, 805 N.E.2d at 62. Because a claim for retaliation is distinct from a claim for hostile work environment, a plaintiff can prevail on the former even when the latter is dismissed. Bain v. City of Springfield, 678 N.E.2d 155, 160 (Mass. 1997).

In her complaint, Lohr alleges that she spoke with Kimmel and other supervisors regarding the alleged affair and Troccoli's hostile treatment towards her. She was terminated from the law firm after making these complaints. These allegations are sufficient to state a claim for retaliation.

Accordingly, the motion of Kimmel, Silverman, and the law firm to dismiss Counts IV, V, and VI will be denied.

### VIII.

In Counts VIII and IX, Lohr brings a claim against Kimmel and Silverman for "wrongful interference with a contractual/advantageous business relationship" she had as an employee of the defendant law firm. To state a tortious interference claim, a plaintiff must allege that: (1) she had a contract or business relationship with a third party; (2) the defendant was aware of the relationship or contract; (3) the defendant improperly interfered with the relationship; and (4)

the plaintiff was harmed as a result.  See Draghetti v. Chmielewski, 626 N.E.2d 862, 868 (Mass. 1994); Kurker v. Hill, 689 N.E.2d 833, 837 (Mass. 1998).

It is well established that a party to the contract or relationship cannot be liable for intentional interference.  See, e.g., Appley v. Locke, 487 N.E.2d 501, 503 (Mass. 1986).  Kimmel and Silverman are the shareholders or officers of the defendant law firm, a professional corporation which bears their names and which had a contractual relationship with Lohr.  Kimmel and Silverman are "so closely identified with the corporation itself, and with its policies, that [they] should not be treated as a third person in relation to corporate contracts, susceptible to charges of tortious interference."  Schinkel v. Maxi Holding, Inc., 565 N.E.2d 1219, 1225 (Mass. App. Ct. 1991).  Thus, Kimmel and Silverman cannot be held liable for tortious interference with a contract or business relationship between Lohr and the law firm.  Griffin v. Schneider, No. 93-1253, 1993 WL 220403, at *1 (1st Cir. June 24, 1993); see also Michelson v. Exxon Research & Eng'g Co., 808 F.2d 1005, 1007-08 (3d Cir. 1987).

Counts VIII and IX will be dismissed.

### IX.

Finally, we address the claim of Lohr for wrongful discharge in violation of public policy.  The law firm argues that common law claims for wrongful discharge are barred by the Massachusetts Anti-Discrimination statute, which creates a comprehensive and remedial remedy.  Ruffino v. State Street Bank

and Trust Co., 908 F. Supp. 1019, 1052 (D. Mass. 1995); Melley v. Gillette Corp., 475 N.E.2d 1227, 1229-30 (Mass. App. Ct. 1985). Lohr does not argue to the contrary.

We will grant the motion of the law firm to dismiss Count VII of the complaint.