**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                          )
KRISTA V. LOHR,                           )
             Plaintiff,                   )          CIVIL ACTION NO.:
                                          )          No.: 2:10-cv-05857-HB
                                          )
v.                                        )
                                          )
KIMMEL & SILVERMAN, P.C., and             )
CRAIG KIMMEL, ESQ.                        )
                                          )
             Defendants.                  )
_____ )

**PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS KIMMEL &
SILVER, P.C. AND CRAIG KIMMEL, ESQ. FOR NONCOMPLIANCE WITH
COURT'S DISCOVERY ORDERS**

**I. Proceedings Leading up to Plaintiff's Request for Sanctions**

On November 28, 2011, the Defendants filed their fourth Motion to Seal information that

has been part of the public court docket in Massachusetts since March 24, 2009.[1]  They also

sought sanctions against the Plaintiff alleging this information was protected from disclosure,

which is inaccurate.  In an effort to expedite this matter, Plaintiff's counsel sent Defense counsel

an email indicating they would not oppose the sealing, however, did oppose the request for

sanctions. (See Exhibit A).

After a court conference where the court reminded the parties of the time deadlines

ordered, the Plaintiff attempted to schedule the depositions of the Defendants' representatives

_____

[1] The Defendants have repeatedly attempted to have information sealed by the court which is a matter of public
record in the Massachusetts case of Porro v. Kimmel & Silverman, P.C. (Docket No.: 1:07-CV-12000-GAO).
Specifically the information sought to be sealed is the sexmail exchange between Craig Kimmel & Angela Troccoli
dated July 18, 2006 and the deposition testimony of Kimmel & Troccoli.

Craig Kimmel, Lisa Graham and Jeff Ehrmann.  Attorney Angueira advised the Defendants'

counsel of available dates (See Email Attached as Exhibit B).

The court amended the discovery deadline and extended it to December 31, 2011 and

reminded counsel of their obligation to complete all discovery prior to the deadline. Plaintiff had

complied with all discovery requests and the only remaining discovery were the depositions of

Craig Kimmel, Lisa Graham and Jeff Ehrmann and the Defendants' responses to Plaintiff's

document requests.  In response to the Plaintiff's email providing deposition dates, the

Defendants chose a date not included in the Plaintiff's email (See Exhibit C).  On November 29,

2011, in response to the Defendants' email regarding their Motion to Seal, the Plaintiff advised

the Defendants she would not oppose their request to seal, but, would not agree to a blanket

confidentiality order without the Defendants describing the information they were trying to keep

confidential. Since Plaintiff's counsel was aware that much of the information the Defendants

were trying to seal was public record in Massachusetts, he needed clarification of this

information, otherwise, there would be conflicting statements regarding which emails and

documents were sealed in the current matter but which are actually public record in the

Massachusetts litigation.  The Defendants refused to identify the information (See Exhibit D).

Plaintiff's counsel reminded the Defendants of the public's right to access court related

information.  The court entered a new scheduling order on November 29, 2011 extending the

discovery deadline to December 31, 2011.

## II. Plaintiff's Attempts to Schedule the Depositions of Craig Kimmel, Lisa Graham and Jeff Ehrmann and Obtain Document Responses

In order to comply with the court's order, the Plaintiff suggested the parties proceed with

the depositions of Lisa Graham and Jeff Ehrmann on December 20, 2011 and offered to take the

deposition of Defendant Craig Kimmel by telephone on a different day.  If this was not acceptable, the Plaintiff suggested the court order the date for Craig Kimmel's deposition (See Exhibit E).  The Defendant did not respond.  On December 5, 2011, Plaintiff sent her 3rd request to confirm the deposition dates and ask when the Defendants would produce the documents ordered by the court (See Exhibit F).  During the court conference, the court instructed Defense counsel to provide the documents with ample time to allow Plaintiff's counsel to review them for the depositions.

On December 5, the Defendants confirmed the depositions of Lisa Graham and Jeff Ehrmann for December 20, 2011.  The Defendant did not confirm Craig Kimmel's deposition because he was on vacation but indicated Defense counsel was available on December 27 and 28th (See Exhibit G).  Plaintiff agreed to December 27th and again asked for the Defendants' document responses.

Receiving no response, the Plaintiff sent another email dated December 8 stating "You have not responded to my request for your document responses. Please let me know when I will receive it." (See Exhibit H).  On the same day, December 8, the Defendant again asked if the Plaintiff would agree to a blanket confidentiality agreement and/or order without providing the information requested or a draft confidentiality agreement.  The Plaintiff responded again asking for information about the basis for the Defendants' request in order to properly advise his client and reminding Defendants that much of this information is in the public record. (See Exhibit I)

On December 8, 2011, the Defendants responded stating "<u>There is nothing in the public record</u>. The documents I am referring to have been sealed.  Personal communications should likewise be sealed." (Emphasis added) (See Exhibit J). This statement is a complete falsehood. In the matter of Porro v. Kimmel & Silverman, P.C., Docket No.: 1:07-CV-12000-GAO, the

same sexmail along with other information relating to Kimmel's sexual relationship with Angela Troccoli remains part of the public record. (See attached Motion to Compel filed by Attorney Angueira in the Porro matter on March 9, 2009, which remains part of the public record and contains the same July email and deposition testimony the Defendants continue to request be sealed in this matter; Attached as Exhibit K). As can be seen from the public document, the sexmail between Craig Kimmel and Angela Troccoli along with their respective depositions denying their sexual relationship remains fully disclosed and open as a public record since March 2009, despite the Defendants' numerous motions to seal the same information in this case.

Once again, Plaintiff requested clarification of the "personal communications" the Defendants referred to in their email (See Exhibit J). Out of frustration, the Plaintiff proposed seeking the court's assistance on December 9 for a conference (See Exhibit J). On December 9, the Defendants responded indicating that the documents they were prepared to produce "include certain emails that you have filed with the District Court in Pennsylvania. We are now going to produce to you much of the same emails. I would like to mark these as confidential pursuant to a confidentiality agreement or protective order and produce these documents to you." (Emphasis added). The Plaintiff responded reminding the Defendants that these emails are part of the public record and asked for additional information about the remaining documents. Additionally, the Plaintiff suggested the parties seek the court's assistance in this matter (See Exhibit J).

Plaintiff's counsel advised the Defendants that he called the court and confirmed that Judge Bartle would be available for a telephone conference if needed on December 9, 2011. The Defendants did not respond. The Plaintiff then filed their Motion to Compel and the Defendants filed a Motion for Protective Order on December 9, 2011.

During the court conference on the motions, the Defendants were advised of the court's order regarding the documents.[2] Suspecting further problems and delay, Plaintiff's counsel inquired as to the number of documents the Defendants were to produce and the Defendants stated there were 80 documents the Defendants would produce.  Once again, the court reminded the Defendants' counsel of his obligation to provide the documents in sufficient time to allow Plaintiff's counsel to prepare for the depositions on December 20.  The Defendants were ordered to produce the documents "forthwith" because of the impending deposition date of December 20. The court also instructed Plaintiff's counsel to identify, for Defense counsel, the names and docket numbers of the cases where the information sought to be sealed by the Defendants was a public record.

### III. Defendants' Confidentiality Agreement Signed by the Plaintiff and Defendants Refuse to Produce the Document Responses

On December 15, 2011, for the first time, the Defendants sent the Plaintiff a proposed confidentiality agreement and the Plaintiff immediately signed the confidentiality agreement which included the names and docket numbers of the cases in Massachusetts (See Exhibit L). The Defendants did not send the documents nor sign the confidentiality agreement.

On December 15, the Defendant responded that Craig Kimmel was not available for his deposition on December 27, and no new dates were proposed (See Exhibit M).  On December 16, Plaintiff sent another request for the documents (See Exhibit N).  Still no documents were provided.

Since the Defendant did not respond, the Plaintiff sent another request for the documents

---

[2]  The court admonished counsel for the repeated conferences they had requested from the court for matters typically handled among counsel. Unfortunately, most of the conferences were generated by the Defendants objecting to discovery requests and seeking seal orders on matters that should not have been sealed.  To the extent that Plaintiff now seeks the court's involvement, it is necessary due only to the Defendants' obstructive tactics.

on December 17 asking the Defendants when they are going to comply with the court's order (See Exhibit O). Again, the Defendants did not respond.  On December 19, the Plaintiff requested the documents and advised the Defendants that if they were not provided he would seek a court order (See Exhibit P).  Plaintiff's counsel and his paralegal called Attorney Nemiroff repeatedly asking for the documents and on each occasion a message was left on voicemail and/or they were told Mr. Nemiroff would receive the message. Plaintiff's counsel informed Mr. Nemiroff that he would be traveling out of state and needed the documents forthwith.  Mr. Nemiroff never returned any of these calls (See Attached intra office memorandum from paralegal Lauren Bolognese to Attorney Angueira, Attached as Exhibit Q).

It was not until December 19 at 12:58 P.M. that Attorney Nemiroff finally responded to the Plaintiff's repeated requests and stated "<u>I will not be able to produce the documents by tomorrow</u>.  <u>Apparently</u>, your office informed my staff that if you did not receive documents by tomorrow that you would not hold the deposition of Lisa Graham and Jeff Ehrmann. Accordingly, I will provide you with new dates for the depositions in the near future." (Emphasis added) (See Exhibit R).  As is quite obvious from his email, Attorney Nemiroff states "apparently" without identifying any of the staff members that made such a statement.  The choice of the word apparently is a clear indication that no such comment occurred.  No one from Plaintiff's office ever made such a statement and the repeated emails confirm otherwise. Moreover, there were no other available dates "in the near future" since the discovery deadline is December 31, 2011.

Plaintiff's counsel confirmed with his staff no one made any such representation and Plaintiff's counsel did not.  Moreover, since the discovery deadline was on December 31, 2011, Plaintiff's counsel would never have postponed these depositions knowing the court's strict

adherence to the new deadline.  Plaintiff's counsel immediately responded to the Defendants

allegation denying any such statement was made. (See Exhibit S). The numerous emails between

the offices indicate the Plaintiff was proceeding with the depositions, as agreed to by the

Defendants' email on December 5, 2011. (See Exhibit G).  Instead of advising the Plaintiff's

counsel of any potential problems relating to the document production or the depositions, the

Defendants instead chose to send an email containing incorrect information in order to create an

excuse for what later was revealed as a conflict of interest. This is unacceptable conduct.

It was not until the morning of December 20, when the Plaintiff had a telephone

conference with the court and Mr. Nemiroff that Mr. Nemiroff disclosed the reason why the

Defendants had not complied with the court's order, stating that "a conflict has recently arisen"

between his clients and his office and that his firm would be withdrawing as counsel.  When the

court inquired as to when he became aware of this conflict he reported within the last couple of

days. This would have meant that the alleged conflict occurred between December 18 and

December 20, despite an outstanding court order for the production of the documents.  Although

the court may have additional information relating to the reason for the alleged conflict and

withdrawal, Plaintiff believes this issue could and should have been flushed out long before

December 20.[3] Since the Defendants and their counsel knew about the outstanding document

request, depositions scheduled and the court's order, there should have been no new issues that

occurred relating to this alleged conflict between December 18 and December 20.  Moreover, the

Defendants in this case are experienced litigation counsel who advertise themselves as

experienced trial lawyers and describe their expertise in various types of litigation (See print out

of the Defendants' website pages, Exhibit T).  Presumably any experienced trial lawyer should

be aware of the consequences of engaging in obstructive and evasive discovery delay tactics.  It

---

[3]  The Defendants' counsel requested an ex parte communication with the court to which the Plaintiff did not object.

is interesting to note that these same Defendants developed a conflict with their lawyers in the

Massachusetts litigation requiring their counsel to withdraw suddenly when facing a motion for

Rule 11 sanctions (See Exhibit U; A copy of Kimmel & Silverman Massachusetts lawyers'

Motion to Withdraw). The Defendants knew that Plaintiff's counsel was traveling to

Pennsylvania to conduct these depositions in order to comply with the court's order.  The

Defendants intentionally dragged this out and at the last minute refused to provide the documents

despite the Plaintiff's agreement to a confidentiality order.  There is no justifiable explanation

why these issues between Kimmel & Silverman and their counsel were not addressed earlier and

in time to prevent this late and sudden withdrawal.  This is a very disturbing pattern indicative of

intentionally obstructive litigation tactics.

Plaintiff's counsel had pre arranged flights and hotel reservations from Boston to Chicago

and Chicago to Pennsylvania in order to conduct these depositions. These were all prepaid, non-

refundable expenses incurred by the Plaintiff due to the Defendants lack of respect for the

judicial system and complete non-compliance with the court's order.  Plaintiff's counsel was at

the stenographer's office in Philadelphia prepared to conduct these depositions. (See attached

deposition transcript of proceedings; Exhibit V).

The Defendants had ample time to address these issues and chose to wait until the last

minute while the Defendant, Craig Kimmel, was on vacation.  This is inexcusable conduct

particularly for a defendant lawyer who should know better than to abuse the discovery process

and ignore court orders.  This type of conduct demonstrates a complete lack of respect for the

judiciary, professional courtesy and our rules of procedure.  These Defendants should be

sanctioned by entry of default judgment against them and reimbursement of all attorney's fees,

expenses and costs incurred by the Plaintiff relating to these depositions.  Additionally, the

Defendants should be ordered to produce all 80 documents forthwith or be held in contempt.

The Plaintiff incurred the following expenses and attorney's fees:[4]

| | | |
|---|---|---|
| 1. | Airfare | $339.40 |
| 2. | Hotel | $125.32 |
| 3. | Taxi Transportation to and from the airport | $ 82.08 |
| 4. | Stenographic Charges | Pending |

Alternatively, if the court does not enter judgment against the Defendants then the Defendants should be ordered to attend depositions at the Plaintiff's convenience in Boston and to provide the document responses within 3 days from the date of the court's order.

Respectfully submitted,
The Plaintiff,
By Her Attorney,

_/s/ David P. Angueira___
David P. Angueira, Esq.
BBO No. 019610
Swartz & Swartz, P.C.
10 Marshall Street
Boston, MA 02108
(617) 742-1900

Dated: December 23, 2011

---

[4] The Plaintiff has receipts for these expenses if requested by the court.

## CERTIFICATE OF SERVICE

I, David P. Angueira, Esq., do hereby certify that I have electronically served a copy of *The Plaintiff's Motion for Sanctions Against the Defendants Kimmel & Silverman, P.C. and Craig Kimmel, Esq. for Noncompliance with Court's Discovery Orders*, upon all counsel of record through ECF:


Alexander Nemiroff, Esq.
Jackson Lewis, LLP
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102


                                                          */s/ David P. Angueira*
                                                          David P. Angueira, Esq.

Dated: December 23, 2011